May it please the court, we stand here before this court today with Baxter the cross appellant, asking this court to render a final judgment which it sought unsuccessfully below, and asking for that final judgment based on claims that this court found in In Re. Baxter, World War II. were invalid as being obvious. We, of course, are arguing that Baxter is collaterally estomped from obtaining that final judgment since those claims, as of May 17th of 2012, have indeed been found by this Article III court to be invalid. If we kind of agree with the conclusion here in your analysis, hypothetically, I'm struggling more with the difference between mootness and collateral estoppel. It seems to me getting where you want to go through collateral estoppel raises a number of problems in terms of the judgment being on different standards and so forth, and then the argument that we don't have to follow regional circuits, we make up our own circuits. Why don't you just stick to mootness? We certainly could, Your Honor. The claims are also void ab initio. At this point in time, as of February 11th, 2013, the cancellation was forwarded to the Office of Publications, and the cancellation certificate should be at any point in time. Therefore, under the Seattle box line of cases, those claims were dead from birth. They never began. Therefore, Your Honor is correct. We don't need to reach the collateral estoppel issue since those claims are deemed void ab initio, and again, therefore, Baxter could not collect. So under either ground, Baxter should not be allowed, this case should be remanded to the district court with order that the case should be dismissed. Are there more questions the Court might have on these issues? I know they're rather procedurally complex. I would point out that I stood here before this Court many years ago in the Presenteus I case, where it was argued that the jury original verdict of all the claims being invalid should be reinstated, and it was pointed out that our expert had failed to adequately identify the corresponding claims. Those were the only claims that survived that day in the Presenteus I case. The rest, the jury verdict was reinstated. Those claims were all held to be invalid. Your Honor, Judge Dike, in your concurring opinion, rather presciently suggested that if the district court chose to, the district court could stay in the proceedings, since the remaining claims were of questionable validity, and it is entirely possible that the U.S. Patent and Trademark Office will finally conclude that the claims were invalid. That claims 26-31 of the 434 patent are also invalid. Indeed, they did. It took them five years of re-exam, but they did, and it was affirmed by this Court on May 17, 2012. Can I ask you just a hypothetical? What if we had decided this case, if we had this case before us, before In re Baxter was finally decided, and In re Baxter comes out while our opinion, let's assume we affirm the district court judge, is at least the time hasn't run for cert. Would it be your view that there was no real final judgment because the time had expired for cert, and therefore you'd still be in the same position you think you are or not? That's an interesting question, Your Honor. I hadn't really contemplated it, but if we look at the Moffitt case, a very old United States Supreme Court case from 1876, it would seem to say that until there is not just a final judgment, but that judgment being unappealable, executable, and satisfied, that until that takes place, then there is still the issue. We don't come close to that here, obviously. It is certainly not the practice today. You don't wait until a judgment is satisfied before you may have a res judicata. That seems to me to be a stretch to talk about as being satisfied. That is what the Moffitt case stood for, Your Honor. But again, we don't even need to go there in this case. The issue is, and as Your Honor brought out, when is it that we have the issue of res judicata? That was dealt with repeatedly in Mendenhall, for example, or one of the leading cases on that, the In Re Construction Equipment Company, where what the court found on this very issue, a defendant had gone to trial, had not been able to prove invalidity or carried its burden on invalidity. That finding was upheld by the Federal Circuit. That same defendant put the patent into re-exam. There was a dispute as to whether they had the right to do so. And in the In Re Construction Equipment Company case, the majority found that the reason they were allowed to do so is because the reason was that the district court judgment was not that the patent was valid per se, but that the accused infringer had failed to carry his burden to prove it invalid. That cited then, in turn, the Stevenson case, holding that for this reason, issue preclusion is generally not applicable in patent validity judgment. And that's exactly the situation we have here. All the courts found in Presentious 1 was that we had failed to meet our burden on those four means plus function claims of demonstrating where in the prior art the corresponding structure could be found. That's what it stood for. But now we are before the court with the Patent and Trademark Office having found those claims indeed to be invalid, having done their job where we had failed to do our job, having that gone to the Board of Patent Appeals, having that gone to the Article 3 court, this court, in In Re Baxter. Are you familiar with the GPX case? I don't believe I am, Your Honor. Well, it's pertinent here because what we held in GPX is that finality is not achieved until the appellant mandate issues. So that would indeed be directly on point, Your Honor, and that's what we have here. Obviously, if we were talking about a final judgment, we wouldn't be standing here as appellant appealing the court's denial of our motion for new trial on the past damages, nor would Baxter be standing here as cross-appellant appealing the court's ruling on the running royalty during the transition period. If the court has no other questions, I will reserve whatever time I have left for rebuttal. Thank you very much. Thank you, Mr. Rafferty. Mr. Rafferty, I think. May it please the court. I'm going to address two issues, Your Honor, to start with. So, do you agree that if we were at the stage where the infringement action were commenced in the district court, the complaint had been filed, and at that point the patent office determined that the patent was invalid and reaffirmed that, that that's the end of the infringement case? If there were no final judgment, I would agree, Your Honor. Okay. In this case. It doesn't depend on the burden of proof. It's not a collateral stop loss. The patent would be gone, right? Correct, Your Honor. The difference here, though, is there is a final judgment on the issues of validity, damages, permanent injunction, and entitlement to post. But the problem, there's no such thing as multiple final judgments. There's a final judgment in the whole case, isn't there? And until there's a final judgment in the whole case, under law of the case principles, you can reexamine the interim ruling. What authority is there for the proposition that until a single final judgment is arrived at, that you can't reexamine the other issues if there's a new development, a change in the law, or whatever? I think there's considerable authority, Your Honor. I'll start with the Supreme Court's decision in Budenich. There, the Supreme Court found that even though there was an outstanding issue of attorney's fees that had not been resolved, the underlying judgment was final and could be considered… The Supreme Court has said they're different. The Supreme Court has said attorney's fees are different. Attorney's fees don't prevent the liability and damages judgment from being final. Whereas here, we have a situation in which still arguing about the damages part of it, you have one argument on that, they have one argument on that. I don't see how there can be a final judgment until the damages are resolved. Your Honor, I would submit damages were resolved in Fresenius 1. The issue of damages… We're still arguing about it. This court in the Pace v. Toyota case said there is a distinction between damages for pre-judgment purposes under 284 versus damages, really royalties, post-judgment under 283. But even if that were true, they are challenging the damages award. They're saying that they should be allowed to show that the damages award was based on multiple patents and that since some of those patents have been invalidated, they shouldn't have to pay the full amount of the damage. They're still challenging the damages award. I agree that's their challenge, but I think what we're doing is confusing damages for purposes of 284, which is a jury trial right, and royalties, post-judgment royalties under 283. I'm not talking about your damages argument, I'm talking about theirs. Their damages argument is challenging the jury award. They're saying we want a new trial on damages because the original verdict was based on multiple patents. That's a challenge to the damages, even under your view, right? Sure, your honor. On that point, they are. The district court there correctly ruled that the number of patents never mattered. In the lower court litigation, claims dropped out, patents dropped out. Notwithstanding, neither side's damage theory mattered. And the district court correctly found that because Fresenius never argued the number of patents mattered, there was no grounds for a new trial. In addition... Sure, they may be wrong about it, but they're still arguing it and we haven't resolved that issue. No, I agree, your honor, but one cannot raise an issue that is precluded by a mandate, by the mandate rule. I would submit here the mandate rule precludes Fresenius... You may be right, but until we reject that, until we agree with you, there's no final judgment, right? No, I disagree. There was a final judgment, your honor, in November 2007 on the issues that Fresenius is raising now. We'll call it damages. There was a final judgment on damages. Fresenius appealed the damages ruling prior to that. It did not raise any issue of damages in that appeal. Those issues were waived. And then the judge, this court, issued an opinion affirming damages under 284 under the mandate rule Fresenius is precluded from re-litigating that issue. You may be right, but until we agree with you, it's not final. How can that be wrong? Your honor, I would submit under Budenik, under Major Attoys, under a variety of cases that issues that were resolved by this court's mandate, damages, liability, entitlement to ongoing injunctive relief, and entitlement to post-judgment royalties, those were resolved in Fresenius I. Interestingly, your honor, in In re Baxter, Judge Lorry considered Judge Armstrong's November 2007 opinion a final judgment. That's on page 1365 of the opinion in In re Baxter. It was a final judgment. Now, there were issues of post-judgment relief that were remanded, but in terms of the substantive issues, those were resolved. And your honor, I'll go back to the Budenik opinion for a moment. In Budenik, the Supreme Court said, if there's a collateral issue, the issue you have to look at is, does that issue alter or impair the decision underlining the final judgment? Here, nothing in terms of the amount of post-judgment royalties under 283 would impair damages, liability, or entitlement to post-judgment relief. At the end of the day, your honor, at the end of the day, the issue that was remanded was really an accounting issue. Did the number of patents matter? If so, what should the number be? But that is an accounting issue. It does not alter or impair the judgment that this court affirmed in Fresenius I. So I would submit, your honor, that there is a final judgment in terms of those four major issues. Liability, damages, permanent injunction, and entitlement to post-judgment relief under 283. There was a narrow collateral issue that was remanded, but again, as Judge O'Malley pointed out in… If we reversed on the damages issue and held that there should be a new jury trial on the issue of damages, would we have a final judgment? If we reversed, no. But, your honor… Doesn't the question of whether we reverse or affirm affect whether there is a final judgment? Well, I would submit, your honor, that, again, on remand, if a court says, I am going to remand a case on post-judgment issues, very, very narrow issue, and a party raises an issue that it had no business raising, that does not turn a final judgment into some sort of transitory non-final judgment. The district court correctly found that under this court's mandate, that issue had been resolved. And I do think the mandate rule is very important here. The rationale that's implied in your question would suggest that even though a court of appeals considered all issues raised concerning the 284 issues, liability through damages, if there is a host, if there is a remand on 283 issues, then a party can reopen all those issues by filing a motion for a new trial. That can't be. Judge O'Malley, in her concurrence in the en banc denial of the N. Ray Baxter case, raised this issue. Aren't principles of res judicata applicable here, and don't those issues preclude Fresenius from re-raising all these issues? I would submit under the Lockformer case, the Engle case, the mandate rule precludes Fresenius from re-raising those issues. I would also suggest in terms of the 283 issues, liability through damages, those issues now are over, they've been resolved, they're barred. And there's a very narrow issue left, the amount of royalties. That, your honor, I think is the issue. May I address, your honor, your question of mootness or void ab initio? I think there are three problems with that argument. Number one, the patent office certainly did not think the patent, the 434, was void ab initio. In its briefing on the en banc issue, it ruled that a subsequent PTO decision on re-examination cannot disturb or alter the district court's judgment. What judgment was it referring to? Judge Armstrong's November 2007 ruling. Well that was a very carefully phrased statement, but how could they possibly have it both ways? Well I think they can have it both ways in this way. I think as the courts, this court has said repeatedly, for re-examination and district court litigation, there are two tracks. You can have a re-examination going down one track because of the different burdens of proof and different records, and you can have a district court proceeding going down another path, different burdens, different records. That's In re Swanson, that's Ethicon v. Quigg, that's In re Baxter. I know some think they can't have it both ways, but at least the case law suggests you can have it both ways up to a point. The point is, once there is a final judgment by an Article III court... Any Article III court? Doesn't have to be a final judgment by us? I would submit, Your Honor, that once an Article III court renders an accounting... So if the district court renders a final judgment subject to appeal, then there can be no argument based on a re-examination finding of invalidity? I would submit, Your Honor, that if the district court still has the case... No, no, the district court has rendered a final judgment, it's available to us, the case is here, and there's a re-examination which invalidates the past. What's the effect of that? I would say the effect is something the court consider, but it's not binding. It can't be binding, Your Honor. It's not binding? Why not? What's the difference between saying that it's binding at the outset of the litigation, which you admitted, and saying that it's not binding after the district court renders a judgment which is on appeal to us? Your Honor, you would have an Article III judgment based on a clear and convincing standard. But what authority is there for that? I think the Supreme Court authority that says... Which case? A one-lot, Your Honor. The one-lot decision says principles of collateral estoppel cannot apply when there are different burdens of proof. I agree that it's effective when it comes up at the outset of the case. The same argument about collateral estoppel could be made at that point. No, Your Honor, because there's no judgment at that point. There's no judgment... What difference does the judgment make by a district court that's on appeal to us? I think it makes a profound difference because it raises... What case says that a judgment of the district court prevents this issue from coming up? Well, it's simply a question, Your Honor, of would an Article I agency and its decision... This is Plow? Yes, Your Honor. Have you read GPX? I have not, Your Honor. Well, you should, because GPX says until the appellate mandate issues that a change in the law has to be applied in the pending case. Well, the PTO's reexamination decision could not be applied via principles of collateral estoppel because there are different burdens of proof. That's not a question of collateral estoppel. I would submit it is, Your Honor. Well, then, why do you admit that the Patent Office decision is binding at the outset of litigation before there's a district court judgment? Your Honor, because there is no judgment that would bar or that the collateral estoppel would impact. So, it goes this way. If there's a reexamination, I'm new in the district court, that reexamination decision has prospective application. Once the commissioner issues the certificate canceling the patent, I, as a litigant, I have nothing at that point to litigate. The patent going forward is a nullity. If I'm a litigant and I litigate under a patent and I have an Article III judgment, my rights stem from that judgment. My entitlement stems from that judgment. My property right is embodied in that judgment. And then, there are profound constitutional issues that we address, but more importantly… Ploutt doesn't apply until there's a final judgment. There isn't a final judgment until the appellate mandate issues. It doesn't depend on whether there's a district court judgment. Well, certainly, here are the mandate issues. Your Honor. In this case, the mandate issues. We haven't issued our mandate in this case. Don't we need to put our minds to some simpler approach? As it is, this will go on and on, back and forth. We won't have any resolution until the patent expires. Isn't the question, the basic policy question of who is to decide patent validity, is it to be the courts or is it to be the patent office? Now, I could live with having the patent office have the last word, because it may very well be that they're more likely to get it right than the courts are. But isn't that the fundamental question? Not whether 10 days sooner or later the mandate issue and an otherwise res judicata decision and the other things that we are developing in this curious back and forth. This case has gone on for 10 or 12 years back and forth. But isn't this a policy question that you, who live with a patent system, need to decide who is to decide validity after all? Your Honor, I agree. I think in this case there is a bright line that can be drawn. Well, we have the case that we have before us. We have, in my view, serious constitutional issues different from those that you seem to be referring to. And that's something that we'll have to thrash out. But it does seem to me that all of us, the courts and the users of the system, ought to be concerned, and it's only going to get worse as the statutes have changed, to decide where, in fact, who is to decide where validity lies and when the issues can be laid to rest. I think there is not the specter here of prolonged, renewed litigation. I think the way... But that's what we have here? Because the lower court found the number of patents did not matter. Once the court made that determination, the mandate questioned to the district court, did the number of patents affect your determination of the royalty rate? That was resolved at that point. This court can affirm Judge Armstrong's decision on ongoing royalty and interim royalty. That would end the case. In my view, Your Honor, when you wrote in 2009, this case is all but over, except for the remedy, that was absolutely true. The case was over then. It is effectively over now. Here we are, four years later, and it's not over. So we have some new issues. We have differences of opinion. And, well, we'll do what we can. Okay. Any questions for Mr. Abernathy? Thank you, Your Honor. Ms. Brooks, you have a few minutes. Thank you, Your Honor. I will be very brief. I'd like to just address some of the questions that were posed to counsel. First of all, as to whether and when a judgment is final, that very issue was addressed in Mendenhall, where there was a judgment for AFTEC as far as they weren't able to meet their burden of proving validity. It went up to the Federal Circuit. It was affirmed that they had not met their burden of validity. Then, in a separate proceeding against Cedar Rapids, the same plaintiff, now the patents are found invalid. AFTEC is arguing collateral estoppel. But that wasn't a separate proceeding in the Patent Office, was it? It was a separate district court? It was a separate district court, Your Honor. That's correct. You think there's no difference? Your Honor, as far as Article III versus Article I, that is certainly open to debate. The Patent Office isn't in Article I. It's an administrative agency. That's correct, Your Honor. But what we have here in Ray Baxter is an Article III court upholding the finding of the administrative agency, the PTO. But what I was going to address in Mendenhall was Mendenhall specifically talked about when is judgment final. And what Mendenhall said is that the judgment of this court on liability in AFTEC resulted in a remand for further proceedings. It was not the final judgment in the case. To rise to that level, the litigation must be entirely concluded so that Mendenhall's cause of action against AFTEC was merged into a final judgment. A final judgment is one that, quote, ends the litigation on the merits and leaves nothing for the court to do but execute judgment, unquote. And that was quoting the Catlin v. United States case. We do not have that situation here. And, in fact, the very arguments that Baxter is just making to this court were made to the lower court about judgment being final. And they were made three times. One, in the form of a contempt proceeding, Baxter moved to have Presenius held in contempt for refusal to pay the past damages award. Magistrate Judge Chen at A1687, in his opinion, found that Presenius has a plausible argument that the Federal Circuit's decision did not foreclose a motion for a new damages trial. The problem for Baxter is that the Federal Circuit did not explicitly rule on the issue of prior damages, nor could it be clearly assumed at this junction that the Federal Circuit implicitly so ruled. The Federal Circuit was silent on the issue of damages. Silence does not necessarily mean that an issue has been foreclosed from the trial court's consideration. Now, this court may disagree with that eventually, but only after this court does that is the judgment then final with the mandate then being spread. Are you familiar with that case in Bosch that we heard oral argument with a few weeks ago? No, I'm afraid I'm not familiar with that one either, Your Honor. I apologize. But to go back, Baxter then... I think it's really quite real, and it is not, because the question was finality before or after, if you set aside the accounting. It would be, you're not familiar with that at all? I apologize, Your Honor. No, I am not familiar with that case. I'd be happy to discuss it if Your Honor would like me to. I could take a moment. I still have a couple of minutes left. It involves a provision of the statute that says that if a decision is final except for an accounting, you can appeal. It involves questions of when you can bring an interlocutory appeal, even though the accounting or perhaps the damages faced hasn't been concluded. Thank you, Your Honor. So that, and there are cases in the past that have dealt with that issue also, as to when it is that the decision is final such that you can appeal it without it being a premature appeal. And to me, your friend on the other side seemed to think that there were some implications in terms of accounting, sort of dividing the line on accounting and not accounting. Now, we, of course, haven't decided the Bosch issue, but I assume your view is that what we're doing here is separate and distinct from what was at stake in Bosch. Absolutely. What we are doing here is whether or not our motion for new trial was appropriate. That means the decision has not been final. The court has not ruled on that. Baxter attempted to execute on what they are saying was the final judgment. And on September 20, 2011, they tried to execute, and what the court found at A1690, there is presently no effective final judgment. The court finds that Baxter's motion must be denied as premature and then put it off until after our December hearing date. Baxter moved again to execute, arguing judgment was final. And at A994, once again, the court denied Baxter's motion and granted Presenius' motion, which was for a stay as far as posting an appellate bond so we could bring it before this court. And what the court found on May 3, 2012, at A995, is that the May 16, 2012 final judgment appears to supersede the November 7, 2007 final judgment. Accordingly, the court finds that a stay pending appeal of the new judgment is appropriate. Therefore, there was no final judgment, there is no final judgment, and we are waiting for this court to act before there can be a final judgment. But the claims have now been deemed void, admonitio, and so there is no other action to be taken. Thank you, Your Honor. Thank you. Thank you, Mr. Abernathy. The case is submitted. Do I still have time, Your Honor? Is there something you need to tell us? Yes, on Inouye Bosch. Oh, all right. I'm sorry, the Bosch-Harlan matter. On Bosch, if you don't mind. Yes, I did listen to your argument, Your Honor. I read the briefs. I was very interested in the discussion regarding accounting and whether something is final under 1292C. I know I don't have much time, but the issue was raised. A couple of cases that I think are worth considering that were not in our brief that came up during the hearing. We can assume that we're familiar with Bosch having just started. Right, Your Honor. Should we entertain a little briefing on Bosch? I don't think we need it. I think we're immersed in that case. But it does go to Judge Dyke's question. Yes, it does. I agree that it's not irrelevant. So the Marjorette Toy case and the Johansson v. Payless cases. In particular, the Majorette case dealt with an interlocutory appeal on liability and damages. The question was, was there an accountant? The court there found it had jurisdiction under 1292C. And then in the Johansson case, this court found that even though there was an open issue, the court should have considered that under 1295. As we have here, there was an open issue. The other case I would note, Your Honor, is King Instruments v. Otari. That also deals with the issue of when there is an open issue on remand concerning spare part damages. Notwithstanding that open issue, the judgment leading to liability and damages on the other part of the case was final. And the district court acted appropriately in executing judgment on that portion of it. That side is 814F 2nd, 1560, Your Honor. Yes, I think you can assume that we're familiar with these cases. Do you need the last word, Ms. Burton? No, thank you very much, Your Honor.  Thank you, Your Honor. Thank you, Your Honor. We have the situation in mind. Thank you. Thank you. This case is taken under submission.